# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DAVID B. JOHNSON,

    Plaintiff,

    v.

M. CRUTCHFIELD, et al.,

    Defendants.

CASE NO. 1:05-cv-0351-AWI-DLB (PC)

FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED

(Doc. 49)

I.   Defendant's Motion for Summary Judgment

    A.   Procedural History

Plaintiff David Johnson ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's complaint, filed February 14, 2005, against defendants Crutchfield and Burns ("defendants") for retaliation based on plaintiff's allegations that defendants removed him from his prison industry job in retaliation for advising defendants that he intended to file a grievance. On March 9, 2007, defendants filed a motion for summary judgment. Plaintiff filed an opposition on March 3, 2008.

    B.   Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court

of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

   C. Undisputed Facts

1. Plaintiff was at all relevant times, an inmate in the lawful custody of the California Department of Corrections and Rehabilitation (CDCR), at the Sierra Conservation Center in Jamestown, California.
2. Plaintiff was assigned to the Sierra Conservation Center's Prison Industry Authority (PIA) Fabric Products program on May 6, 2004, under the supervision of both defendants.
3. On December 22, 2004, plaintiff was removed from his PIA work assignment by the Tuolumne Unit Classification Committee (UCC).
4. The UCC removed plaintiff from the program based on defendant Crutchfield's request, because of his "negative attitude and demeanor" which was not conducive for that environment.

5.  A note dated July 1, 2004 on Plaintiff's PIA Worker's Performance Record indicates complaints from the culinary officers that plaintiff was causing problems with other inmates; that he should be kept in the factory; and that someone else should be sent for lunches, ice, etc.

6.  A note dated August 2, 2004 on Plaintiff's PIA Worker's Performance Record describes other inmates' complaints about plaintiff's performance as a porter and problems with PIA staff; and states that plaintiff is high maintenance and requires constant supervision.

7.  On October 21, 2004, defendant Crutchfield issued a general chrono to plaintiff for evading work, which stated, "further occurrences will result in disciplinary action and/or removal from program."

8.  The incident which is the subject of this action occurred on December 9, 2004.

9.  Plaintiff was instructed to turn in his tool pouch because he, and approximately twenty other inmates, were being sent home for the rest of the day due to staff shortages.

10. Defendants did not intend to terminate plaintiff from the PIA program when he was first told to go home.

11. Plaintiff asked defendant Crutchfield why he had to be one of the inmates to leave.

12. Crutchfield instructed plaintiff to turn in his tools.

13. As plaintiff approached the tool cage area, he said, "this is bullshit," and was told by defendant Burns to keep his comments to himself.

14. Burns instructed plaintiff to get his timecard and leave the PIA factory.

15. On December 11, 2004, defendant Crutchfield submitted a Serious Rules Violation Report, Log #12-04-T-027, that was later reduced to a counseling chrono by the Senior Hearing Officer (SHO).

16. In the counseling chrono, the SHO supported the recommendation to remove plaintiff from the PIA program because his negative attitude and demeanor was not conducive for that environment.

17. Defendants claim that Crutchfield recommended plaintiff's removal and submitted a rules violation report because plaintiff's disruptive behavior over being sent home for the day was

the last straw in a continual and escalating pattern of disruptive behavior.

D. <u>Discussion</u>

In his complaint, plaintiff alleges that on December 9, 2004, defendant Crutchfield sent him back from his PIA position, stating that she was cutting the position down to 50 inmates. Plaintiff alleges that when he asked why he was being sent back, she told him that she had picked who she wanted and he should turn in his tools. Plaintiff alleges that he informed defendants Crutchfield and Burns that he was going to file an inmate grievance regarding the issue. Plaintiff contends that when he reported to work on December 10, 2004, he was informed that he had been removed from the position. Plaintiff alleges that he received a chrono which stated that he failed to meet job expectations; was continually disruptive; posed a threat to the safety and security of PIA; and his work performance was at an unacceptable level. Plaintiff alleges that on December 12, 2004, he received a write-up for the incident wherein defendant Crutchfield claimed he was argumentative and disruptive and he caused a work stoppage. Plaintiff contends he was removed from his prison industry job and issued a rules violation in retaliation for telling defendants that he was going to file an inmate grievance.

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1288 (9th Cir. 2003). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, No. 03-15335, 2005 WL 937814, at *5 (9th Cir. Apr. 25, 2005). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995) (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 482 (1995)). The burden is on plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." <u>Pratt</u>, 65 F.3d at 808.

Defendants contend plaintiff was removed from the PIA program due to his argumentative

5

attitude toward staff and fellow inmates in PIA; his disruptive behavior in the prior five months; and defendant Crutchfield's request that plaintiff be removed from the program. Doc. 49, Exhibit A, Crutchfield Dec., ¶ 4. Defendants contend that plaintiff was counseled on July 1, 2004 concerning complaints from culinary officers that he was causing problems with other inmates. *Id.* at ¶ 5. Defendants contend that on August 2, 2004, plaintiff was counseled concerning other inmates' complaints about his performance as a porter; problems with PIA staff; and that he was high maintenance and required constant supervision. *Id.* at ¶ 6.

Defendants contend that on October 21, 2004, plaintiff received a general chrono for evading work because for the fourth consecutive day, defendant Crutchfield observed plaintiff stop working about twenty minutes early. *Id.* at ¶ 7-8. Defendant Crutchfield contends when she instructed plaintiff to return to work, he became argumentative, threw his coat on the floor, became even more irate and caused a work stoppage. *Id.* at ¶ 11. Defendants contend plaintiff was instructed to turn in his tools and leave the job site. *Id.* at ¶ 13.

Defendants contend the incident of December 9, 2004 was the final incident in a pattern of disruptive behavior. Plaintiff was instructed to turn in his tool pouch because he and approximately twenty other inmates were being sent home for the rest of the day due to staff shortages. DUF 9. Defendants contend there was no intention to terminate plaintiff from the PIA program when he was first told to go home. DUF 10. Defendants contend that plaintiff became argumentative and aggressive toward defendant Crutchfield asking why he had to be one of the inmates to leave. Doc. 49, Ex A at ¶ 15 and Ex. B at ¶ 6. Crutchfield contends she informed plaintiff that she did not have time to argue about it with him and she again instructed him to turn in his tools. Ex. A at ¶ 16 and Ex. B. ¶ 7. Defendants contend that after lashing out at defendant Burns, plaintiff left the area. Ex. A at ¶ 20 and Ex. B. ¶ 12.

Defendants argue that defendant Crutchfield recommended plaintiffs job removal and submitted a rules violation report because plaintiff's disruptive behavior over being sent home for the day was the last straw in a continual and escalating pattern of disruptive behavior. Defendants argue that plaintiff's documented history of causing problems with other inmates; problems with PIA staff; being argumentative and aggressive; having a negative attitude and demeanor; being high

6

1  maintenance and requiring constant supervision were the substantial and motivating factors behind
2  Crutchfield's actions. Defendants contend that plaintiff's threat to file a grievance over being sent
3  home for the day had nothing to do with Crutchfield's actions.
4        Defendants further argue that plaintiff has not been deterred from continuing to exercise his
5  constitutional right to complain nor would defendants' alleged retaliatory conduct deter a person of
6  ordinary fitness from doing so. Defendants note that plaintiff has filed three inmate grievances
7  dealing with his job removal dated December 10 and 22, 2004 and January 12, 2005. *See* Plaintiff's
8  Opposition to Defendants' Motion to Dismiss Ex. J, L.
9        The court finds that defendants have met their initial burden of informing the court of the
10 basis for his motion, and identifying those portions of the record which he believes demonstrate the
11 absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that
12 a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith
13 Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of
14 this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but
15 is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery
16 material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586
17 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).
18       At issue here is not whether plaintiff was engaged in a protected activity or whether the
19 issuance of the CDC 115 was adverse to plaintiff. Rather, at issue is whether the conduct (removal
20 and issuance of 115) advanced a legitimate correctional goal and whether the issuance of the CDC
21 115 chilled plaintiff's rights.
22       Plaintiff bears the burden of proving "that there were no legitimate correctional purposes
23 motivating the actions he complains of." Pratt, 65 F.3d at 808. Plaintiff's conclusory assertions that
24 defendants' conduct was motivated by his threat to file a grievance are insufficient to meet this
25 burden. Plaintiff admits that on December 9, 2004, he was instructed to turn in his tool pouch
26 because he, and approximately twenty other inmates, were being sent home. DUF 9. Plaintiff also
27 concedes that defendants had no intention to terminate plaintiff from the PIA program when he was
28 first told to go home. DUF 10. While plaintiff denies that he was "argumentative and aggressive,"

he admits that he questioned Crutchfield about why he had to leave and Crutchfield responded by again telling him that he should turn in his tools. DUF 11, 12. Plaintiff also admits that as he approached the tool cage area, he said, "this is bullshit," and was told by defendant Burns to keep his comments to himself and to leave the PIA factory. DUF 13, 14.[1]

Maintaining order is a legitimate correctional goal. The court cannot think of any circumstance in which the exchange, even as described by plaintiff, would be proper conduct incapable of supporting subsequent disciplinary action. While plaintiff submits evidence that defendants gave him "Satisfactory" work reports on September 1, 2004, November 1, 2004 and December 1, 2004 (*see* Plaintiff's Opposition, Ex. H), plaintiff's PIA Performance Record includes notes, dated prior to the incident, that plaintiff is "high maintenance" and "requires constant supervision." DUF 5, 6; Plaintiff's Opposition, Ex. D. On October 21, 2004, Crutchfield issued a general chrono to him for evading work. *See* DUF 7. The chrono warned plaintiff that "further occurrences will result in disciplinary action and or removal from program."[2] *See* DUF 7, Plaintiff's Opposition, Ex. E. It is undisputed that an "incident" occurred on December 9, 2004.

Plaintiff has not submitted any evidence the removal and the issuance of the CDC 115 Rules Violation Report following his self-described incident with defendants did not reasonably advance a legitimate correctional goal. The fact that because plaintiff threatened to file an inmate grievance prior to his removal and the issuance of the CDC 115, the timing is plausible to support retaliation claim is, alone, insufficient where it is also a fact that the parties had an exchange prior to the action taken and that very exchange is the asserted basis for the action.

Further, plaintiff has not submitted any evidence that defendants' actions chilled the exercise of his First Amendment rights. See Robinson, 408 F.3d at 568-69 (with respect to the chilling element, the proper inquiry is whether the act "would chill or silence a person of ordinary firmness from future First Amendment activities.") (internal quotation marks and citations omitted). At this

---

[1] For the purpose of resolving defendant's motion for summary judgment, the court adopts plaintiff's description of the incident.

[2] Plaintiff argues this chrono was not placed in his C file until December 28, 2004 but plaintiff does not deny receiving it.

8

stage in the action, plaintiff must present some evidence in support of his claim. Plaintiff may not continue to rely on conclusory assertions in his opposition that his rights were chilled.

Plaintiff has not met his burden of demonstrating the existence of material factual disputes. Accordingly, defendants are entitled to judgment as a matter of law on plaintiff's claim that he was removed from his prison industry job and that a rules violation report was issued against him, in retaliation for telling defendants that he intended to file a grievance.

E.  Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that defendants' motion for summary judgment, filed March 9, 2007, be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fifteen (15) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **March 7, 2008**              /s/ **Dennis L. Beck**
                                        UNITED STATES MAGISTRATE JUDGE